UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VINCE BUONOMO, on behalf of Himself and other similarly situated | ) ) | |
| Plaintiff, | ) ) | 1:13-cv-5274 |
| | ) | Judge St. Eve |
| v. | ) | Magistrate Judge Cox |
| | ) | |
| OPTIMUM OUTCOMES, INC., | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO OPTIMUM'S MOTION TO STRIKE**

The Telephone Consumer Protection Act, 47 U.C.C.§ 227(b)(1)(A)(iii) ("TCPA") broadly prohibits debt collection agencies from calling cell phones using an "automatic telephone dialing system" ("ATDS") or prerecorded voice. *Mims v. Arrow Fin. Servs., LLC*, -- U.S. --, 132 S. Ct. 740 (2012). Any equipment that has the capacity to dial numbers without human intervention is an ATDS. *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F.Supp.2d 723 (N.D.Ill. 2011).

Optimum uses a Livevox predictive dialer system to call debtors. The class in this case is limited to people who Optimum called using this, or any similar, system. Whether use of Livevox constitutes use of an ATDS in this case is the most important issue in this case. The proofs for this issue, which may require expert testimony, are identical for plaintiff and each member of the class.

There is an affirmative defense in TCPA cases: if a defendant can show that it had been given "prior express consent" to make such calls, then there is no liability. 47 U.S.C. §227(b)(1)(A)(iii). Providing one's phone number to a creditor or debt collector constitutes "prior express consent" to be called on that number, with respect to a particular transaction. *In

1

*re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* GC Doc. 02-278, 23 FCC Rcd. 559, 564-65 ¶¶10 (Jan. 4, 2008). The key to consent is whether a call recipient gave the caller (or its privies) his cell number as to the subject matter of the call. Plaintiff never provided his cell number to Optimum or the creditor, and has defined the class to include only persons who also did not give their cell number to Optimum or the creditor, with respect to the account being collected.

In other words, plaintiff defined his class in objective, factual terms, so that application of this common fact (nobody gave out their number with respect to the debt being collected) to law will decide this ultimate issue in one broad stroke. Because the FCC has charged creditors and debt collectors with obtaining consent before making calls, and proving such if challenged, In re TCPA 2008, 23 FCC Rcd. at , consent should be readily available from defendant's records.

Optimum's motion to strike ignores these substantive similarities among the class members, and asks the Court to scuttle this case by making inferences in its favor. While simultaneously blocking plaintiff from obtaining discovery regarding consent, Optimum focuses on hypothetical differences among the class members that may, or may not, exist. The Court should grant plaintiff's motion to compel, which is being briefed simultaneously with this motion, and deny the motion to strike without prejudice so that plaintiff may obtain discovery to determine whether of Optimum's arguments have any real-life applicability to this case.

**I.      Standard for Rule 12(f) Motion to Strike.**

Rule 12(f) governs motions to strike. Pursuant to that Rule, the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "Motions to strike, however, are disfavored and will usually be denied."

Cumis Ins. Soc., Inc. v. Peters, 983 F.Supp. 787, 798 (N.D.Ill.1997). In order to succeed on a motion to strike allegations contained in a complaint, "the movant must show that 'the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration' and that the allegations are unduly prejudicial." Id. (citing Trustmark Life Ins. Co. v. University of Chicago Hosps., No. 94 C 4692, 1996 WL 68009, at *1 (N.D.Ill. Feb.14, 1996)). The Seventh Circuit has "advise[d] defense counsel against moving to strike extraneous matter unless its presence in the complaint is actually prejudicial to the defense." Davis v. Ruby Foods, Inc., 269 F.3d 818, 821 (7th Cir.2001). "Prejudice results where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party." Cumis, 983 F.Supp. at 798 (citing VPHI, Inc. v. National Educ. Training Group, Inc., No. 94 C 5559, 1995 WL 51405, at *3 (N.D.Ill. Jan.20, 1995)).[1]

## II. Argument.

Optimum does not argue that the complaint is redundant, immaterial, impertinent, or scandalous. Instead, it argues that the class allegations should be stricken because, in its view, the class definition is imperfect. The Amended Complaint seeks certification of the following class:

> All persons whose cell phone number defendant called on or after July 23, 2009, using Livevox (or similar telephone equipment) and/or a prerecorded or artificial voice, where the phone number was not obtained (by defendant, the creditor or their privies) directly from the called party with respect to the subject matter of the alleged debt being collected (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call...).

---

[1] This section is taken verbatim form *Indiana Ins. Co. v. Westfield Ins. Co.*, 2010 WL 3404971 (N.D.Ill. Aug. 26, 2010).

3

> Plaintiff alleges a subclass of persons who … notified that it was calling the wrong number.[2]

This class definition tracks the elements of a claim under the TCPA, through objective criteria and is justiciable on a class-wide basis through common proofs. It eliminates the "prior express consent" affirmative defense from this case as to the entire class. The motion to strike asks the Court to make inappropriate assumptions about its records and defenses, without the benefit of evidence. The motion to strike should be denied, and plaintiff's motion to compel discovery should be granted. *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011) (failure to permit discovery on class issues may be reversible error); *Santiago v. RadioShack Corp.*, 2012 WL 934524 (N.D.Ill. Feb. 10, 2012) (premature to strike the class allegations before discovery).

### A. Defendant Concedes Numerosity and does not Contest Adequacy or Superiority.

For purposes of Optimum's motion, which purports to be dispositive of the class issues in this case, it asks the Court to assume numerosity has been satisfied. It also does not contest adequacy or superiority.

### B. Plaintiff's Claims are Typical of those of the Class.

"Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." W*agner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). A "plaintiffs claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983).

---

[2] Plaintiff has removed reference to requests to cease and desist from this class definition, because he wishes to focus the case on persons who never gave consent in the first place. Plaintiff requests that the Court permit him leave to make this alteration to the class definition.

In this case, plaintiff, just like the other class members, received Defendant's autodialed calls to his cell phone, made using Livevox predictive dialing equipment. Plaintiff seeks the same damages for himself and everyone in the class, based upon identical conduct. Optimum's suggestion that plaintiff is not typical because it might have individualized affirmative defenses is of no moment as to Rule 23(a)(3). *Wagner*, 95 F.3d at 534. Typicality is satisfied.

**C. Common Issues Predominate.**

"Analysis of predominance under Rule 23(b)(3)," and thus of commonality under Rule 23(a)(2), "begins … with the elements of the underlying cause of action." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 815 (7th Cir.2012). "If, to make a *prima facie* showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id*.

The elements of a TCPA claim under 47 U.S.C. §227(b)(1)(A)(iii) are: (1) a call was made; (2) the caller used an automatic telephone dialing system; and (3) the telephone number called was assigned to a cellular telephone service. *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F.Supp.2d 898, 904-05 (N.D.Ill.2012). Consent is a bit of an anomaly: courts fairly uniformly require that a plaintiff plead lack of consent in his complaint, but also agree that consent is an affirmative defense for which the defendant has the burden of proof. *Id.* at 905; *In re TCPA 2008*, 23 FCC Rcd. at 565, ¶10; *Martin v. Bureau of Collection Recovery, LLC*, 2011 WL 2311869 (N.D.Ill., June 13, 2011).[3] The class definition ensures that each of these elements, including

---

[3] That the defendant bears the burden of proof for consent is consistent with the text of the statute, which couches consent in terms of an exception to the general rule that all autodialed calls to cell phones are illegal, in a parenthetical using the phrase "other than." 47 U.S.C.

consent, is susceptible to resolution in a single proceeding; probably summary judgment.

Optimum does not contest whether elements (1) or (3) can be determined through objective criteria, and review of its records. Similarly, Optimum does not, and cannot, challenge that the final element of a *prima facie* case (2), use of an ATDS, is different for plaintiff and any class member. Everyone in the class was called using a Livevox or similar dialer.

Instead of focusing on the elements of plaintiff's claim, Optimum challenges whether there are common proofs as to its affirmative defense, prior express consent. Of course, not wishing to be successfully sued, Optimum has also refused to provide any discovery on its defenses as to plaintiff or any class member.

But Optimum's challenge to plaintiff's class allegations as to consent fail because of the way the class is defined. The FCC has held that consent to be autodialed for debt collection purposes happens when a consumer gives his phone number to the creditor, as to the account being collected:

> We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.
> ****
> We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed.

*In re TCPA 2008*, 23 FCC Rcd. 563, 564; ¶¶9, 10. FCC rulings as to the TCPA are not reviewable except through the Hobbs Act.[4] *CE Design Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446–50

---

§227(b)(1)(A)(iii). Moreover, because TCPA is a remedial statute, *Gager v. Dell Fin.Servs.Inc.*, 727 F.3d 265 (3d Cir. 2013), a defendant asserting an exception bears the burden of proof that it is entitled to such. *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948).
[4] It is worth noting that the 2008 FCC order was issued upon a request for reconsideration and clarification by ACA International, a debt collection trade group of which Optimum appears to

(7th Cir.2010). The consumer providing his phone number to the creditor or collection agency is therefore an essential element of the affirmative defense.

The class definition tracks this ruling in factual terms so as to exclude persons who provided their phone number to Optimum or the creditor with respect to the debt being collected. Plaintiff and the class share this common, and dispositive, factual thread with regard to consent, which will be analyzed using the same legal principles in a single summary judgment motion.

Whether Optimum's lawyers may be able to come up with hypothetical scenarios as to why it might not have consent for one person or another is of no moment. Indeed, a party cannot simply claim that common issues predominate; it must prove such. *GM Sign, Inc. v. Brink's Mfg. Co.*, 2011 WL 248511, at * 7 (N.D.Ill. Jan. 25, 2011). It would be incongruous with such a rule to strike class allegations based upon unsupported claims related to affirmative defenses.

Indeed, comments by Optimum such as "Many of the debtors consented to the calls by providing their cellular telephone numbers to the creditor" or "there is no homogeneous list" are unsupported in this record. Indeed, there is no suggestion anywhere in the Amended Complaint as to where any class members' phone number came from, including plaintiff's. Optimum apparently seeks to have the Court take judicial notice of such facts, which is inappropriate. *U.S. v. Wood*, 925 F.2d 1580, 1581 7th Cir. 1991) (matters of public record subject to judicial notice). Moreover, they are wrong: the class is defined so as to exclude any person who consented, and defendant allegedly has records of where it obtained the phone numbers

---

be a member. E.g. http://www.oorcm.com/home/services_baddebtcollection.html.

called. Amended Complaint ¶23. Optimum's answer, Docket Entry 53, ¶23, does not deny this allegation, so it is admitted. Fed.R.Civ.P. 8(b)(6).

In any event, the Seventh Circuit has recently issued an admonishment to TCPA defendants to avoid "try[ing] to derail legitimate class actions by conjuring up trivial credibility problems or insubstantial defenses unique to the class representative. Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus…." *CE Design v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011).

*Vigus v. Southern Illinois Riverboat Casino Cruises, Inc.*, 274 F.R.D 279 (S.D.Ill. 2011) was decided on plaintiff's motion for class certification, not a motion to strike. The Court denied class certification on ascertainability and typicality grounds because the class definition included a "substantial number of people who voluntarily gave their residential telephone numbers to the Casino knowing the Casino would call those numbers to present special commercial offers." *Id*. at 236. In other words, not only did some class members consent to receiving the calls, but the class definition was such that the class member's subjective intent was at issue. That problem does not exist in this case. And to the extent that *Vigus* denied certification on other grounds, plaintiff respectfully submits that the Court was incorrect. Indeed, *Vigus*' reasoning based upon *Gene & Gene, LLC v. Biopay, LLC*, 541 F.3d 318 (5th Cir. 2008) that a fax-blast or robocall campaign should be viewed as a series of individual actions unsusceptible to class treatment has been implicitly overruled by the Seventh Circuit. *Holtzman, v. Turza*, 728 F.3d 682 (7th Cir. 2013).[5]

---

[5] Interestingly, *Gene and Gene* was certified as a class on remand, 269 F.R.D. 621 (M.D.La.2009),

Contrary to Optimum's suggestions, the class list is homogeneous: it is defined through objective factual criteria, so that the class will include only persons who have viable TCPA claims – or at least the same TCPA claims that plaintiff does. The proof as to consent will be identical for plaintiff and each class member: nobody gave his phone number to Optimum or the creditor as to the debt being collected. See *CE Design v. King Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011) (holding that where consent can be proven through common evidence, certification of TCPA case is appropriate).

*Connelly v. Hilton Grand Vacations Co., LLC*, 2013 WL 5835414 (S.D.Cal. Oct. 29, 2013) is also distinguishable. The plaintiff in Connelly sought certification of a class of persons who were called, each "who voluntarily provided their cell phone numbers in a variety of factually different scenarios." Because consent hinges on whether a consumer gives her number out, each of the different scenarios in which the *Connelly* class members provided their number to Hilton represented a different analysis for determination of the merits of the defense. In contrast, the class in this case is defined to take consent out of the picture entirely: nobody in the class gave Optimum or the creditor his cell phone number.

The common predominate issues in this case are: (1) did Optimum call class members, (2) using an ATDS, (3) on their cell phones, (4) that no class member gave her cell phone number to defendant or the creditor, as to the debt being collected. Each of these elements will be the subject of identical proofs; most likely upon a summary judgment. That is why Judge

---

after discovery had been obtained on class issues, and after it was disclosed that defendant had withheld key discovery regarding its class list. members. The Fifth Circuit reversed that ruling, holding that its prior decision was the Law of the Case, regardless of the newly discovered evidence and court analysis. 624 F.3d 698 (5th Cir. 2010). Of course, no such law of the case exists here, and the Court should permit discovery as to consent, so that certification can be properly presented.

Easterbrook recently opined that "Class certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients. *Holtzman, v. Turza*, 728 F.3d 682 (7th Cir. 2013). Commonality and predominance are satisfied. Responses to plaintiff's discovery requests will confirm this.

### D. The Proposed Definition is Not Fail-Safe.

Optimum argues that the proposed class definition is impermissibly "fail-safe" because the class includes only persons who can recover if the class is certified. This is incorrect.

A fail-safe class is one that is defined so that "whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). The fail-safe problem exists where a class definition includes subjective criteria that creates a "springing" class: "all persons as to whom defendant violated the law" would be a prototypical, albeit inarticulate example. If defendant's conduct did not violate the law, then the class is a null set and contains no persons. But if the defendant's conduct did violate, then plaintiff and the class win. Such a class definition is improper because it is unfair "a certified class should not be able to engage in risk-free litigation by eluding *res judicata.*" *Flanagan v. Allstate Ins. Co.*, 225 F.R.D. 569, 574 (N.D.Ill. 2004), later opinion, 228 F.R.D. 617 (2005).

The class definition in the Amended Complaint does not suffer from fail-safe these infirmities. It specifies who is in the class through objective factual criteria, rather than through reference to whether defendant violated the TCPA. If the class, as defined, is certified, plaintiff will move for summary judgment as to whether defendant used an ATDS to make the challenged calls. Plaintiff will also move for summary judgment, asking the Court to rule that

because no class member provided her phone number to defendant, Optimum is not entitled to a "prior express consent" affirmative defense.

Even if the class were fail-safe, the proper solution would not be to strike the class allegations or deny certification. Indeed, the Seventh Circuit instructs that such problems "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825.

**E. The Class is Ascertainable and Identifiable.**

Ascertainability is not mentioned in Rule 23, but is a requisite to certification in the Seventh Circuit. Ascertainability mandates that a class be defined through objective criteria relating to the defendant's conduct, without regard to subjective views or feelings of class members. *Oshana v. Coca-Cola, Co*, 472, F.3d 506, 514 (7th Cir. 2006).

*Oshana* was a class action brought against Coca-Cola, which alleged violations of the Illinois Consumer Fraud Act. The Plaintiff alleged that Coke was unjustly enriched because Diet Coke is apparently sweetened with aspartame, while fountain Diet Coke is sweetened with a mixture of aspartame and saccharin. *Id*. at 509. The Seventh Circuit affirmed denial of class certification, holding that the class was not ascertainable because of the proximate causation element of a claim under the Consumer Fraud Act: there was no way to prove this essential element on a classwide basis, and because the class contained persons who had no claims at all:

> Some people may have bought fountain Diet Coke because it contained saccharin, and some people may have bought fountain Diet Coke even though it had saccharin. Countless members of Oshana's putative class could not show any damage, let alone damage proximately caused by Coke's alleged deception.

Id. at 514. The problem of subjective reliance does not exist in this case.

11

The same problem occurred in *Gannon v. Network Telephone Servs., Inc.*, 2013 WL 2450199 (C.D.Cal. Jun. 5, 2013), cited by Optimum. Class certification was denied in *Gannon* because the class definition included reference to the sending of "unauthorized" text messages. *Id*. at *3. The District Court correctly reasoned that the *Gannon* definition required mini trials to determine the subjective answer to whether a text was "authorized" or not. This element of the *Gannon* class definition was fail-safe, because it sought to exclude persons for whom there existed an affirmative defense, through reference to whether the defense existed.

In contrast, the consent element of the class definition in this case is described through *objective* criteria: it includes only persons who never gave their cell phone number to Optimum or the creditor with respect to the alleged debt being collected. *In re TCPA 2008*, 23 FCC Rcd. at 565, ¶10-11.

*Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417-18 (N.D.Ill. 2012) is instructive. *Boundas* challenged the propriety of a retailer's use of gift cards that were allegedly improper because they expired; the proposed class consisted of persons who received the allegedly improper gift cards. Defendant opposed class certification, arguing that it would be impossible to figure out who was in the class. Judge Feinerman held that notice need not be by United States mail, and noted that publication notice is the proper way to deal with an objectively defined class for whom addresses are not known.

The Seventh Circuit recently addressed the identifiability in *Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 676-77 (7th Cir. 2013); a case not cited by Optimum. *Hughes* was an Electronic Funds Transfer Act, 15 U.S.C. §1693, case, which alleged improper notice of fees at automatic teller machines ("ATMs"). The Hughes court decertified the class because there

12

existed no record linking class members to transactions that violated EFTA. *Id*. at 676. Therefore, according to the District Court, the class was unidentifiable, notice impossible and must be decertified. *Id*.

Judge Posner reversed decertification, holding that Rule 23(b)(3) does not require specific identification of class members' names, addresses or other information. The Court acknowledged that in some cases identification of class members is impracticable, and noted that Rule 23 requires only the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. at 677 quoting Rule 23(b)(3). "When reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted." *Id*. at 678.

The reasoning in Hughes suggests that the class should be certified in this case. Individual notice by United States mail is practicable here because Optimum was required by law to keep track of its debtors, its calls, and with whom it spoke. 68 Ill.Admin.Code 1210.140(b)(1)(A)(iii). Optimum's answer admits that it kept track of "wrong number" calls. Docket Entry 53 at ¶ 28. But to the extent that Optimum was derelict in its duties on this point, a reverse look-up can determine which numbers were cell phones at the time of the calls, and/or subpoenas to cell phone companies can help obtain this information, based upon the phone numbers called.

Here, because of Optimum's recordkeeping duties and as evidenced by admissions in its answer, most class members can be identified through defendant's records. But even if they are not, in no event should defendant's poor recordkeeping prevent certification. *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 145-46 (N.D. Ill. 2010) ("[D]ecertifying the

13

class because class members cannot be identified by name would create a perverse incentive—it would reward a class action defendant for its failure to maintain customer records. . . . The absence of any impropriety aside, whether a class action is appropriate cannot be a function of [Defendant's] record-keeping practices."); *Sadowski v. Med1 Online, LLC*, No. 07-cv-2973, 2008 WL 2224892, *3 (N.D. Ill. May 27, 2008) (approving certification of TCPA case in the absence of class list, finding that denying class certification would unfairly punish the victims); *Critchfield Physical Therapy v. The Taranto Grp. Inc.*, 263 P.3d 767, 776 (Kan. 2011) (affirming TCPA class certification, noting "a defendant cannot escape liability simply by losing or destroying the list of its victims," and approving a class description that "identifies a group of [class members] by describing a set of common characteristics such that a member of the group may demonstrate a right to recovery based on the description."); *Appleton Elec. Co. v. Advance-United Expressways*, 494 F.2d 126, 139 (7th Cir. 1974) ("Class actions cannot be defeated by destroying records.").

This is particularly true here, where defendant had an affirmative legal duty to keep track of the information that will help identify the class. But this may be a moot point: Optimum's answer admits that it kept track of persons who told Optimum that it was calling the wrong number. Docket Item 53; ¶28. Although Optimum's moving papers suggest that some such class members may have lied to Optimum about whether it was calling the "wrong number," there is no evidence that this ever happened. Indeed, the only evidence in the case is that Optimum continued calling the plaintiff, even after he told Optimum that it was calling the wrong number and asked that calls cease. Perhaps discovery will reveal that Optimum commonly ignored consumer notifications that it was calling the wrong number. Or perhaps

discovery will reveal that Optimum has a data field associated with each consumer relating to whether it had consent to call, but ignored such. These kinds of facts would explain why Optimum has taken the remarkable position that plaintiff is not entitled to any call records at all; not even those which relate to calls to plaintiff. The Court should deny the motion to strike and compel Optimum to produce the evidence upon which it bases its consent affirmative defense.

### III. A Fed.R.Civ.P. 23(c)(4) "Issue" Class May be Appropriate.

If, despite the consent-negating class definition, the Court finds that individualized issues of consent preclude certification of a money damages class, plaintiff requests that the Court permit him to continue the case on behalf of an "issue class" pursuant to Fed.R.Civ.P. 23©(4). *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) (the "court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments.")

### CONCLUSION

For the reasons herein, the motion to strike should be denied so that the plaintiff may obtain discovery regarding Optimum's affirmative defenses, which has been unreasonably withheld.

**Date:** January 8, 2014

Respectfully submitted,

/s/Alexander H. Burke

BURKE LAW OFFICES, LLC

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601

15

(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com


Larry Smith
David M. Marco
SMITHMARCO, P.C.
205 N. Michigan Ave., Suite 2940
Chicago, Illinois 60601
**Telephone:** (312) 546-6539
**Facsimile:** (888) 418-1277
**E-mail:** dmarco@smithmarco.com