**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VINCE BUONOMO, on behalf of himself and others similarly situated, ) ) ) Plaintiffs, ) ) v. ) ) OPTIMUM OUTCOMES, INC., ) ) Defendant. ) | Case No. 13-cv-5274 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Vince Buonomo brings this putative class action against Defendant Optimum Outcomes, Inc. ("Optimum") for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* (R. 44, Am. Compl. ¶¶ 1-2.) Before the Court is Optimum's motion to strike Buonomo's class allegations from the Amended Complaint. (R. 45.) For the following reasons, the Court grants Optimum's motion to strike in part, denies it in part, and denies it as moot in part.

### BACKGROUND

Optimum, an Illinois corporation, is a hospital receivables management company that provides collection services for outstanding medical accounts. (Am Compl. ¶ 7.) Buonomo alleges that Optimum called his cell phone without authorization numerous times during the four years before Buonomo filed this suit, including over a dozen times in May and June 2013. (*Id.* ¶ 8.) According to Buonomo, the calls "appear to have been attempting to locate and collect from an alleged debtor other than the Plaintiff." (*Id.* ¶ 10.) In at least some of the calls,

Optimum requested to talk to Brian Woodfield, an individual with whom Buonomo had no relationship.  (*Id.* ¶ 11.)

Buonomo alleges that Optimum called him using a fully-automated dialing system, rather than human dialers, and in some of the calls, Optimum played an artificial or prerecorded message.  (*Id.* ¶¶ 12-15.)  In November 2012, Buonomo notified Optimum that it was calling the wrong number.  (*Id.* ¶ 18.)  Although Optimum committed to removing Buonomo's cell phone number from its autodialer system, Buonomo continued to receive autodialed calls from Optimum after November 2012.  (*Id.* ¶ 19.)

Buonomo asserts two counts against Optimum: Count I for violation of the TCPA and Count II for violation of the Fair Debt Collection Practices Act.  With respect to Count I, Buonomo seeks to represent the following class of individuals:

> All persons whose cell phone number defendant called on or after July 23, 2009, using Livevox (or similar telephone equipment) and/or a prerecorded or artificial voice, where the phone number was not obtained (by defendant, the creditor or their privies) directly from the called party with respect to the subject matter of the alleged debt being collected (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call, defendant was calling a wrong number or defendant was requested to stop calling).

(*Id.* ¶ 40.)  Buonomo also seeks certification of a subclass of "persons who requested that [Optimum] cease and desist and/or notified [Optimum] that it was calling the wrong number." (*Id.*)  Optimum argues that Buonomo's class allegations fail to satisfy Federal Rule of Civil Procedure 23's requirements as a matter of law and moves to strike them from the Amended Complaint.  (*See* R. 45, Mot. to Strike.)

## LEGAL STANDARD

Buonomo argues that Rule 12(f), which allows the Court to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," *see* Fed. R. Civ. P.

12(f), governs Optimum's motion to strike. (*See* R. 57, Pl. Resp. Br. at 2-3.) Courts in this District, however, evaluate motions to strike class allegations under Rule 23, not Rule 12(f). *See, e.g., Valentine v. WideOpen West Fin., LLC,* 288 F.R.D. 407, 414 (N.D. Ill. 2012); *Hill v. Wells Fargo Bank, N.A.,* 946 F. Supp. 2d 817, 829-33 (N.D. Ill. 2013); *Bohn v. Boiron, Inc.,* No. 11 C 8704, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013).

Rule 23(c)(1)(A) directs that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Although "[m]ost often it will not be 'practicable' for the court to do that at the pleading stage, . . . sometimes the complaint will make it clear that class certification is inappropriate." *Hill,* 946 F. Supp. 2d at 829 (citing *General Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)); *see also Kasalo v. Harris & Harris, Ltd.,* 656 F.3d 557, 563 (7th Cir. 2011) ("Consistent with [Rule 23(c)(1)(A)'s] language, a court may deny class certification even before the plaintiff files a motion requesting certification."). In those situations, a court may determine that class certification is inappropriate before the parties conduct class discovery. *See Bohn,* 2013 WL 3975126, at *5.

If the plaintiff's class allegations are facially and inherently deficient, for example, "a motion to strike class allegations . . . can be an appropriate device to determine whether [the] case will proceed as a class action." *See Bohn,* 2013 WL 3975126, at *5; *Wolfkiel v. Intersections Ins. Servs. Inc.,* No. 13 C 7133, 2014 WL 866979, at *4 (N.D. Ill. Mar. 5, 2014); *Wright v. Family Dollar, Inc.,* No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010); *Muehlbauer v. General Motors Corp.,* 431 F. Supp. 2d 847, 870 (N.D. Ill. 2006). If, on the other hand, the dispute concerning class certification is factual in nature and "discovery is needed to determine whether a class should be certified," a motion to strike the class allegations

at the pleading stage is premature. *See Wright,* 2010 WL 4962838, at *1; *Santiago v. RadioShack Corp.,* No. 11 C 3508, 2012 WL 934524, at *4 (N.D. Ill. Feb. 10, 2012) (similar); *see also Boatwright v. Walgreen Co.,* No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, . . . a decision denying class status by striking class allegations at the pleading stage is inappropriate.").

To obtain class certification under Rule 23, a plaintiff must satisfy the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). *See Harper v. Sheriff of Cook County,* 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca–Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). In this case, Buonomo seeks class certification pursuant to Rule 23(b)(3) and Rule 23(b)(2). (*See* Am. Compl. ¶¶ 40-50.) Rule 23(b)(2) allows class certification where the "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2), and Rule 23(b)(3) allows class certification where "questions of law and fact common to members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently resolving the dispute in question." Fed. R. Civ. P. 23(b)(3). "Failure to meet any of [Rule 23's] requirements precludes class certification." *Harper,* 581 F.3d at 513 (quoting *Arreola v. Godinez,* 546 F.3d 788, 794 (7th Cir. 2008)).

## ANALYSIS

The TCPA, in relevant part, prohibits persons within the United States or persons making calls to the United States from using an automatic telephone dialing system or an artificial or

4

prerecorded voice to make calls to cell phone numbers other than for emergency purposes or "with the prior express consent of the called party." *See* 47 U.S.C. § 227(b)(1). Buonomo asserts a TCPA claim under a "wrong party" theory, similar to the theory the plaintiffs relied on in *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637 (7th Cir. 2012), *reh'g denied* (May 25, 2012). In *Soppet*, the Seventh Circuit described these TCPA "wrong party" claims as follows:

> Customer incurs a debt and does not pay. Creditor hires Bill Collector to dun Customer for the money. Bill Collector puts a machine on the job and repeatedly calls Cell Number, at which Customer had agreed to receive phone calls by giving his number to Creditor. . . . The machine, called a predictive dialer, works autonomously until a human voice comes on the line. If that happens, an employee in Bill Collector's call center will join the call. But Customer no longer subscribes to Cell Number, which has been reassigned to Bystander. A human being who called Cell Number would realize that Customer was no longer the subscriber. But predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master. Meanwhile Bystander is out of pocket the cost of the airtime minutes and has had to listen to a lot of useless voicemail.

*Id.* at 638-39.

In this case, Buonomo is the bystander who received numerous autodialed calls from Optimum to his cell phone attempting to locate a customer/debtor with whom he had no relationship. (*See* Am. Compl. ¶¶ 8-11.) Buonomo seeks to represent a proposed class of individuals who received similar calls from Optimum but who did not provide their cell phone number to Optimum, an underlying creditor, or their privies with respect to the debt at issue. (*Id.* ¶ 40.)

Optimum argues that Buonomo's class allegations fail as a matter of law for a number of reasons. First, Optimum argues that Buonomo's claim fails to satisfy the typicality requirement because the proposed class includes actual debtors whose cell phone numbers Optimum obtained through skip-tracing or call capturing, not just "wrong parties" like Buonomo. (R. 47, Def. Mem. at 5-7.) Second, Optimum argues that issues of individualized consent defeat

5

commonality and predominance even in a class consisting of only "wrong parties."  (*Id.* at 10-14.)  Third, Optimum argues that the proposed class is not ascertainable and constitutes an improper "fail-safe" class.  (*Id.* at 7-10.)  Fourth, Optimum argues that Buonomo's proposed class fails under Rule 23(b)(2) because he seeks primarily money damages rather than injunctive relief.[1]  (*Id.* at 15.)

**I.      Typicality**

Rule 23(a)(3) requires a plaintiff to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3); *see also Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir. 2000)).  Generally, "[a] claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory."  *Oshana,* 472 F.3d at 514 (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)).  "Although '[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,'" the named plaintiff's claims must share "the same essential characteristics as the claims of the class at large.'"  *Muro,* 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)).

Optimum argues that Buonomo's "wrong party" claim is not typical of the TCPA claims of many proposed class members because the proposed class encompasses not only other "wrong parties" like Buonomo but also actual debtors whose cell phone numbers Optimum obtained

---

[1] Optimum does not challenge Buonomo's class allegations on the basis of numerosity, adequacy of representation, or superiority.

using skip-tracing or call capturing.[2] (*Id.*) According to Optimum, "[t]here is a fundamental difference between making a call to the debtor's cell number after it was reassigned to a new subscriber (plaintiff's theory), and making a call to the actual debtor at a number obtained from skiptracing, since the actual debtor is likely to have released the number to the creditor during the creation of the debt, and thereby consented to [Optimum's] calls." (*Id.*) The Court agrees that the proposed class is overbroad.

One of the central issues in TCPA "wrong party" cases is whether the called party, which the Seventh Circuit has defined as "the person subscribing to the called number at the time the call is made," *see Soppet,* 679 F.3d at 643, is the debtor who consented to receiving calls from the creditor. *See id.* at 640-41 ("Consent to call a given number must come from its current subscriber."). In TCPA cases involving an actual debtor, on the other hand, the central issue is whether the debtor consented to receiving calls on his or her cell phone. *See*, *e.g., Mitchem v. Illinois Collection Serv., Inc.,* No. 09 C 7274, 2012 WL 170968, at *2 (N.D. Ill. Jan. 20, 2012); *Sengenberger v. Credit Control Servs., Inc.,* No. 09 C 2796, 2010 WL 1791270, at *4-5 (N.D. Ill. May 5, 2010); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd. 559 ¶¶ 9-10 (Jan. 4, 2008) ("Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party, we clarify that such calls are permissible." (footnote omitted)). Put differently, the central inquiry in a "wrong party" case is *who* provided consent, whereas the central inquiry in an actual debtor

---

[2] Optimum also challenged Buonomo's proposed subclass of "persons who requested that [Optimum] cease and desist and/or notified [Optimum] that it was calling the wrong number" for failing to satisfy Rule 23(a)(3)'s typicality requirement. (Def. Mem. at 6-7.) In his response brief, Buonomo requested leave for the Court to amend the class definition to remove reference to "requests to cease and desist." (Pl. Resp. Br. at 4 n.2.) The Court grants Buonomo's unopposed request and strikes from the definition of the proposed subclass any reference to persons who "requested that Optimum cease and desist" from calling a given cell phone number.

case is *whether* the plaintiff provided consent to receive calls on his or her cell phone. Accordingly, Buonomo fails to satisfy Rule 23(a)(3)'s typicality requirement because his "wrong party" claim lacks the same "essential characteristics" as the claims of actual debtors included in the proposed class. *See Muro,* 580 F.3d at 492.

This ruling, however, does not end the Court's inquiry. Although Buonomo's proposed class is overbroad, this defect does not necessarily warrant striking Buonono's class allegations altogether if they would sufficiently support a narrower proposed class consisting of only "wrong party" claimants. *Cf. Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 815 (7th Cir. 2012) (noting that defining a class is "more of an art than a science" and problems regarding over-inclusive class definitions "can and often should be resolved by refining the class definition rather than by flatly denying class certification on that basis"). Therefore, the Court still must evaluate Optimum's arguments regarding whether certification of a "wrong party"-only class is also improper.

## II. Commonality and Predominance

Commonality requires a plaintiff to show that "questions of law or fact common to the class" exist. *See* Fed. R. Civ. P. 23(a)(2). To establish commonality, a plaintiff must do more than merely raise "common questions—even in droves[;]" rather, the plaintiff must show that a class-wide proceeding will "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes,* --- U.S. ---, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (internal quotations omitted; emphasis in original). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Messner,* 669 F.3d at 815 (quoting *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005)). If, however, "the same

evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.*

Predominance is similar to commonality but requires a "far more demanding" inquiry. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *Messner,* 669 F.3d at 814. In broad terms, predominance requires that the "legal or factual questions that qualify each class member's case as a genuine controversy" are "sufficiently cohesive to warrant adjudication by representation." *Messner,* 669 F.3d at 814 (quoting *Amchem,* 521 U.S. at 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689). It requires more than simply "counting noses"—*i.e.,* "determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.,* 739 F.3d 1083, 1085 (7th Cir. 2014). Instead, predominance requires a qualitative decision regarding whether "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner,* 669 F.3d at 815.

Courts determine whether issues of individualized consent defeat commonality and predominance in a TCPA on a case-by-case basis after evaluating the specific evidence available to prove consent. *See Jamison v. First Credit Servs., Inc.,* 290 F.R.D. 92, 106-07 (N.D. Ill. 2013) (collecting cases); *see also Wolfkiel,* 2014 WL 866979, at *6 (denying motion to strike class allegations where the named plaintiffs' allegations were sufficient to overcome the problem of individual consent at the pleading stage). Where the defendant "sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone," courts have found that issues of individualized consent predominate any common questions of law or fact. *Jamison,* 290 F.R.D. at 107. On the other hand, where a defendant "fail[s] to set forth this specific evidence and instead only make[s] vague assertions about

9

consent, then individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification." *Id.*; *see also Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1042 (9th Cir. 2012) (rejecting the defendant's argument that issues of individualized consent defeated commonality because the defendant "did not show a single instance where express consent was given before the call was placed"); *Silbaugh v. Viking Magazine Servs.,* 278 F.R.D. 389, 393 (N.D. Ohio 2012) ("Having produced no evidence that any individual consented to receive the text messages . . . defendant is unable to realistically argue that individual issues regarding consent outweigh the commonality.").

Optimum argues that issues of individualized consent plague Buonomo's proposed class and prevent him from establishing commonality and predominance as a matter of law. (*See* Def. Mem. at 10-15.) Specifically, Optimum argues that determining whether consent existed would require the Court to hold mini-trials regarding whether each proposed class member is, in fact, a "wrong party" or an actual debtor simply claiming to be a "wrong party." (*See* R. 60, Def. Reply Br. at 3.) Optimum, however, fails to present any specific evidence—as opposed to mere speculation—that this purportedly individualized issue predominates over common issues. Nor can it given that Optimum has refused to provide any class discovery while its motion to strike is pending. (*See* R. 56, Def. Resp. to Mot. to Compel at 5-8.) In essence, Optimum asks the Court to determine that issues of consent are not susceptible to class-wide proof in this case while, at the same time, preventing discovery of what kind of class-wide proof may exist.

Optimum cites several TCPA cases in which courts have held that issues of individualized consent defeat predominance. (*See* Def. Mem. at 10-13; Def. Reply Br. at 11-14.) Optimum's reliance on those cases is misplaced. None of the cases addressed a motion to strike class allegations at the pleading stage before allowing the plaintiff to obtain class discovery. To

10

the contrary, in each case, the court based its decision to deny class certification on the nature of the evidence obtained through discovery. *See Gene & Gene LLC v. Biopay, LLC,* 541 F.3d 318, 328-29 (5th Cir. 2008) (evidence showed that the defendant obtained fax numbers from various sources, "its database entries [did] not consistently or accurately reflect whether a given recipient had consented to receive fax advertisements," and the defendant obtained prior express consent from at least some recipients); *G.M. Sign, Inc. v. Brink's Mfg. Co.,* No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011) (determining that the plaintiff could not prove its case through generalized proof where the defendant "put forth evidence that it obtained the consent of Plaintiff and the other non-pre-existing-customer recipients of the faxes before sending them"); *Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.,* 274 F.R.D. 229, 235-36 (S.D. Ill. 2011) ("[T]he Casino has provided evidence that at least three telephone numbers identified using Vigus' culling process did *not* indicate reassigned numbers. In addition, [the Casino] offers a number of reasons the identification process would not be conclusive . . . ." (emphasis in original)); *Conrad v. General Motors Acceptance Corp.,* 283 F.R.D. 326, 329-330 (N.D. Tex. 2012) (noting that the parties had conducted class discovery, including sampling the defendant's call records, before the court denied class certification); *Connelly v. Hilton Grand Vacations Co., LLC,* 294 F.R.D. 574, 578 (S.D. Cal. 2013) (the differing circumstances under which the proposed class members provided their cell phone numbers to the defendant were "sufficiently varied to provide dissimilar opportunities for the expression of consent").[3] *See also Gannon v. Network Tele. Servs., Inc.,* No. CV 12-9777-RGK (PJWx), 2013 WL 2450199, at *2-3 (C.D. Ill.

---

[3] In *Connelly,* moreover, the court previously denied the defendant's motion to dismiss the class allegations at the pleading stage. *See Connelly v. Hilton Grad Vacations Co., LLC,* No. 12 CV 599 JLS (KSC) at ECF No. 17 (S.D. Cal. June 11, 2012). In addition to finding the defendant's motion procedurally improper, the court noted that "courts rarely dispose of class actions at the pleading stage before discovery has commenced." *Id.* at 4 n.1 (citing *In re Wal-Mart Stores, Inc.,* 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007)).

June 5, 2013) (finding that the proposed TCPA class was neither ascertainable nor identifiable where the "[d]efendants provide[d] evidence that some of the [text message] recipients may have consented, because callers were explicitly informed that they may be contacted by the company at the number from which they had called and provided an opportunity to opt-out of receiving such contacts").

Accordingly, the Court rejects Optimum's predominance and commonality arguments as premature. *See Wolfkiel,* 2014 WL 866979, at *6 (denying motion to strike class allegations where the named plaintiffs' allegations were sufficient to overcome the problem of individual consent at the pleading stage); *cf. Ira Holtzman, C.P.A. v. Turza,* 728 F.3d 682, 684-85 (7th Cir. 2013) (rejecting the defendant's argument that individual issues regarding whether each proposed class member received a junk fax precluded class certification because the defendant had "compiled information about which faxes were received and by whom[,] [and] no reasonable juror could conclude that th[e] data are inaccurate."). The Court makes no determinations regarding whether proposed class members' claims are, in fact, susceptible to generalized proof; it holds only that Buonomo must have the opportunity to conduct discovery regarding what evidence that exists before the Court can determine whether certification of a "wrong party" class is appropriate in this case.

### III. Ascertainability

Although not an express requirement of Rule 23, Seventh Circuit precedent requires the plaintiff to demonstrate that his or her proposed class is ascertainable or, in other words, that it "is indeed identifiable as a class." *See Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006); *see also Jamie S. v. Milwaukee Public Schs.,* 668 F.3d 481, 495-96 (7th Cir. 2012) (determining that the certified class failed because "there is no way to know or readily ascertain

who is a member of the class"). To satisfy ascertainability, the plaintiff must identify a method of determining class membership based on "precise, objective criteria." *G.M. Sign, Inc. v. Franklin Bank, S.S.B.,* No. 06 C 949, 2008 WL 3889950, at *5 (N.D. Ill. Aug. 20, 2008); *see also Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,* 271 F.R.D. 139, 146 (N.D. Ill. 2010) ("[A] class is sufficiently definite if its members can be ascertained by objective criteria and may be defined by reference to defendant's conduct." (quoting *Hinman v. M & M Rental Ctr., Inc.,* 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008)).

Optimum argues that Buonomo's proposed class is unascertainable because "predominant individual issues would have to be resolved to identify people with actual *Soppet* [wrong party] claims." (Def. Reply Br. at 8.) This argument fails for the same reason as Optimum's predominance and commonality arguments—because it is premature for the Court to evaluate whether such individual issues prevent class certification before determining what, if any, evidence exists to identify "wrong parties" on a class-wide basis. (*See* Part II, *supra*.)

Optimum also argues that Buonono's proposed class constitutes an improper "fail-safe" class.[4] (*See* Def. Mem. at 9-10.) Because the Court has determined that Buonomo's class is overbroad and will require Buonomo to amend his proposed class definition, Optimum's "fail-safe" argument is moot.

## IV. Rule 23(b)(2) Class for Injunctive Relief

Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

---

[4] A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner,* 669 F.3d at 815. Fail-safe class definitions are improper "because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.*

23(b)(2). Optimum argues that Buonomo fails to allege a proper Rule 23(b)(2) class because he seeks primarily money damages, rather than injunctive or declaratory relief. (*See* Def. Mem. at 15.) Buonomo failed to respond to Optimum's Rule 23(b)(2) argument. The Court, therefore, grants Optimum's motion to strike Buonomo's allegations regarding his proposed Rule 23(b)(2) class. *See Wojtas v. Capital Guardian Tr. Co.,* 477 F.3d 924, 926 (7th Cir. 2007) (the failure to offer any opposition to a movant's argument constitutes waiver).

## CONCLUSION

For the reasons explained above, the Court grants Optimum's motion to strike the class allegations from the Amended Complaint in part, denies it in part, and denies it as moot in part. (R. 45.) Buonomo shall file a Second Amended Complaint amending the proposed class definition in a manner consistent with the Court's opinion by March 31, 2014.

**DATED: March 17, 2014**  **ENTERED**

_____
AMY J. ST. EVE
U.S. District Court Judge